**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------x

TILE, INC.,

               Plaintiff,               Civil Action No. 1:20-cv-2297-BMC

    -against-

COMPUTRON SYSTEMS INTERNATIONAL,
INC.,

               Defendant.

--------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: 212.536.3900
Facsimile: 212.536.3901

<strong><u>TABLE OF CONTENTS</u></strong>

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

    The Tile Marks......................................................................................................... 2

    Defendant's Unlawful Conduct ............................................................................... 3

    The Likelihood of Confusion and Injury Caused by Defendant's Actions ........................ 3

    Defendant's Default ................................................................................................. 4

ARGUMENT ................................................................................................................... 4

I.     TILE IS ENTITLED TO A DEFAULT JUDGMENT ......................................... 4

    Tile Has Set Forth Valid Trademark Infringement Claims ................................. 6

II.    THIS COURT SHOULD PERMANENTLY ENJOIN DEFENDANT FROM
FUTURE INFRINGEMENT OF TILE'S TRADEMARKS ........................................... 11

III.   PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES ......................................... 13

CONCLUSION.................................................................................................................. 15

306499038.67

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

All-Star Marketing Group, LLC v. Media Brands Co., Ltd.,
  775 F. Supp. 2d 613 (S.D.N.Y. 2011)...................................................................................13

Bose Corp. v. Ejaz,
  C.A. No. 11-10629-DJC, 2012 WL 4052861 (D. Mass. Sept. 13, 2012) ...............................10

Bravado Int'l Group Merch. Servs. v. Ninna, Inc.,
  655 F. Supp. 2d 177 (E.D.N.Y. 2009) ...............................................................................5, 11

Brennan's, Inc. v. Brennan's Rest., L.L.C.,
  360 F.3d 125 (2d Cir. 2004)....................................................................................................9

Church & Dwight Co. v. Kaloti Enters. of Michigan LLC,
  697 F. Supp. 2d 287 (E.D.N.Y. 2009), vacated on other grounds, C.A. No. 07
  Civ. 0612(BMC) (E.D.N.Y. Sept. 28, 2011) .....................................................................5, 15

Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,
  794 F.2d 38 (2d Cir. 1986).......................................................................................................7

Coach, Inc. v. Horizon Trading USA Inc.,
  908 F. Supp. 2d 426 (S.D.N.Y. 2012)......................................................................................8

Coach, Inc. v. Melendez,
  C.A. No. 10 Civ. 6178, 2011 WL 4542971 (S.D.N.Y. Sept. 2, 2011) ...................................13

Cotton v. Slone,
  4 F.3d 176 (2d Cir. 1993) ........................................................................................................5

Coty Inc. v. Cosmopolitan Cosmetics Inc.,
  No. 18 CV 11145-LTS-HBP, 2020 WL 106745 (S.D.N.Y. Jan. 9, 2020) ...............................8

Dan-Foam v. Brand Name Beds, LLC,
  500 F.Supp.2d 296 (S.D.N.Y. 2007).......................................................................................10

E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.,
  90 F. Supp. 2d 277 (S.D.N.Y. 2000).........................................................................................7

El Greco Leather Prods. Co., Inc. v. Shoe World,
  806 F.2d 392 (2d Cir. 1986)....................................................................................................12

Fender Musical Instruments Corp. v. Unlimited Music Ctr., Inc.,
  C.A. No. 3:93CV2449, 1995 WL 241990 (D. Conn. Feb. 16, 1995)......................................10

306499038.07

Fustok v. ContiCommodity Servs., Inc.,
  873 F.2d 38 (2d Cir. 1989)...............................................................................................5

Gucci Am., Inc. v. Curveal Fashion,
  C.A. No. 09 Civ. 8458, 2010 WL 308303 (S.D.N.Y. Jan. 20, 2010) ......................................14

Gucci Am. Inc. v. Tyrrell-Miller,
  678 F. Supp. 2d 117 (S.D.N.Y. 2008).................................................................................11

Heraeus Kulzer LLC v. Omni Dental Supply,
  C.A. No. 12-11099-RGS, 2013 WL 3305284 (D. Mass. July 1, 2013)..................................10

J.T. Kalmar GmbH v. KLS Lighting Co.,
  C.A. No. 17-CV-7505 (BMC), 2019 WL 3780091 (E.D.N.Y. Aug. 12, 2019) ...............6, 7, 8

Johnson & Johnson Consumer Cos. v. Aini,
  540 F. Supp. 2d 374 (E.D.N.Y. 2008) ..................................................................................8

Malletier v. Carducci Leather Fashions, Inc.,
  648 F. Supp. 2d 501 (S.D.N.Y. 2009)........................................................................5, 14, 15

Merck & Co., Inc. v. Mediplan Health Consulting, Inc.,
  425 F. Supp. 2d 402 (S.D.N.Y. 2006)...................................................................................7

Merck Eprova AG v. Gnosis S.p.A.,
  760 F.3d 247 (2d Cir. 2014)................................................................................................7

Mister Softee, Inc. v. Tsirkos,
  C.A. No. 14-cv-1975-LTS-RLE, 2015 WL 7458619 (S.D.N.Y. Nov. 23, 2015)....................12

New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,
  704 F. Supp. 2d 305 (S.D.N.Y. 2010)..................................................................................12

Polaroid Corp. v. Polorad Elecs. Corp.,
  287 F.2d 492 (2d Cir. 1961)................................................................................................9

Rodgers v. Anderson,
  C.A. No. 04-cv-1149, 2005 WL 950021 (S.D.N.Y. April 26, 2005) .....................................14

Rolex Watch U.S.A., Inc. v. Brown,
  C.A. No. 01 CIV.9155 JGK AJP, 2002 WL 1226863 (S.D.N.Y. June 5, 2002) .................5, 15

Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,
  982 F.2d 633 (1st Cir. 1992).......................................................................................6, 7, 8, 10

Tiffany and Co. v. Costco Wholesale Corp.,
  C.A. No. 13-CIV-1041 (LTS) (DCF), 2019 WL 120765 (S.D.N.Y. Jan. 7,
  2019) ................................................................................................................................8

U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,
800 F. Supp. 2d 515 (S.D.N.Y. 2011)......................................................................................12

United States Patent & Trademark Office v. Booking.com B. V.,
C.A. No. 19-46, 2020 WL 3518365 (U.S. June 30, 2020) ....................................................6, 7

United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.,
128 F.3d 86 (2d Cir. 1997)......................................................................................................11

Zino Davidoff SA v. CVS Corp.,
571 F.3d 238 (2d Cir. 2009)......................................................................................................9

**Statutes**

15 U.S.C. § 1057(b) ....................................................................................................................7

15 U.S.C. § 1116(a) ..................................................................................................................11

15 U.S.C. § 1117(c) .............................................................................................................13, 14

**Other Authorities**

Fed. R. Civ. P. 54(c) ................................................................................................................13

Fed. R. Civ. P. 55(a) ..................................................................................................................4

Fed. R. Civ. P. 55(b)(2).............................................................................................................5

306499036.7

Plaintiff Tile, Inc. ("Tile" or "Plaintiff"), by its attorneys K&L Gates LLP, respectfully submits this memorandum of law, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, in support of its motion for default judgment against Defendant Computron Systems International, Inc. ("Computron" or "Defendant").

<u>**INTRODUCTION**</u>

Tile designs, manufactures, and sells a variety of wireless tracking devices used to locate objects (the "Tile Products"). Indeed, the Tile Products are the world's best-selling Bluetooth trackers with over 20 million Tile Products sold worldwide. In fact, the Tile Products assist individuals in locating more than 3 million unique items every day.

This is a trademark lawsuit involving Tile's efforts to protect its customers and its brand name from Defendant's nefarious activities. As alleged in the complaint, Defendant's online sale of used, counterfeit, or liquidation Tile Products as "new" products is detrimental to Tile, as consumers do not receive the Tile Products that they believe that they are obtaining. Moreover, sales of actual "new" Tile Products are diminished by Defendant's misconduct, as it diverts consumers away from genuine Tile Products.

In order to protect its customers and reputation, Tile filed this action on May 21, 2020, seeking injunctive and monetary relief against Defendant for: (1) infringement of federally registered trademarks in violation of Section 32 of the Trademark Act as amended, 15 U.S.C. § 1114; and (2) unfair competition and false advertising in violation of Section 43(a) of the Lanham Act as amended, 15 U.S.C. § 1125(a). Defendant did not respond to Tile's Complaint and the Clerk of the Court has entered default. <u>See</u> Docket No. 13. Tile now seeks a default judgment against Defendant along with a permanent injunction to prevent Defendant, its successors and assigns, and its officers, employees, agents, and all persons acting in concert with it, from

1

infringing Tile's trademarks in the future. Tile also seeks an award of statutory damages for Defendant's willful infringement of Tile's registered trademarks.

## STATEMENT OF FACTS

### The Tile Marks

As explained above, Tile is a Delaware corporation that manufactures and sells the industry leading Tile Products. See Complaint at ¶ 14, attached as Exhibit A to the Declaration of Morgan Nickerson ("Nickerson Decl."). On September 11, 2018, the U.S. Patent and Trademark Office ("USPTO") issued Reg. No. 5,561,759 and Reg. No. 5,561,760 for use of the TILE mark on, *inter alia*, a "Wireless tracking device…". (hereinafter, the "Tile Marks"). See Nickerson Decl. ¶ 6, Ex. B; Complaint at ¶ 17. Tile is the sole and exclusive owner of the federally registered Tile Marks on the USPTO's Principal Register and has been in continuous use of the Tile Marks since at least 2014. See Complaint at ¶ 18. Said registrations are in full force and effect. Id. Tile advertises, distributes, and sells its products to consumers under the Tile Marks. Id. ¶ 20. Tile's federal trademark registrations are duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of Tile's exclusive ownership of the Tile Marks. Id. ¶ 22. Tile has invested significant time, money, and effort in advertising, promoting, and developing the Tile Marks throughout the United States and the world. Id. ¶ 23. In order to guarantee that Tile Products sold to consumers meet high standards of quality control, Tile has also implemented a network of authorized resellers who agree to the manner in which they market and sell Tile Products ("Authorized Resellers" and the "Authorized Reseller Network"). As a result of such actions, Tile has established substantial goodwill and widespread recognition in its Tile Marks, and the marks have become associated exclusively with Tile and its products by both customers and potential customers, as well as the general public at large. Id.

2

**Defendant's Unlawful Conduct**

Defendant has sold and is currently selling Tile Products utilizing the Tile Marks. Id. ¶ 25. Tile has never authorized or otherwise granted Defendant permission to use the Tile Marks in the sale of its products or otherwise. Id. ¶ 26. Moreover, Defendant is improperly advertising that the Tile Products it lists for sale are "new" despite the fact that they are in fact used, counterfeit, or liquidation product. Id. ¶ 27. Defendant's improper advertisement of a counterfeit, used, or liquidation product as a "new" product is detrimental to Tile, as consumers do not receive the products that they believe that they are obtaining and such nefarious conduct by Defendant results in less sales of actual "new" Tile Products. Id. ¶ 29.

Defendant also incorrectly advertises and represents to consumers that the Tile Products it sells come with a manufacturer's warranty, when they do not. Id. ¶ 30. While Tile warrants that its products will be free from defects in materials and workmanship for a period of one year; critically, however, Tile's warranty does not apply to products purchased from unauthorized resellers, such as Defendant. Id. ¶ 31. Warranty information is important to consumers, and Defendant deceives its customers into believing that the Tile Products purchased from Defendant are covered by Tile's manufacturer's warranty, when, in fact, they are not. Id. ¶ 32. Defendant's continued advertisement and sale of used, liquidation, or counterfeit Tile Products as "new," as well as its false advertisement of a full Tile warranty has harmed, and continues to harm, Tile as well as the consuming public. Id. ¶ 33.

**The Likelihood of Confusion and Injury Caused by Defendant's Actions**

Defendant's actions substantially harm Tile and its consumers who ultimately purchase Defendant's Tile Products believing them to be the same genuine, high-quality, and warranted products that they would receive from Tile or an Authorized Reseller. Id. ¶ 35. Defendant's

3

conduct results in consumer confusion as well as the dilution of Tile's goodwill and trade name, as consumers are ultimately disappointed upon receiving products that are materially different and/or inferior from those they believe they are purchasing. Id. ¶ 44. The sale of Tile Products by Defendant interferes with Tile's ability to control the quality and reputation of its products bearing the Tile Marks. Id. ¶¶ 36, 37. As a result of Defendant's actions, Tile is suffering the loss of the enormous goodwill it created in the Tile Marks. Id. ¶ 38. Defendant is likely to continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Tile's irreparable harm. Id. ¶ 39.

### Defendant's Default

True and accurate copies of the Complaint and Summons were served upon Defendant on June 1, 2020, as indicated by the return of service filed with the Court. See Nickerson Decl. ¶ 8; Docket No. 9. As such, Defendant was required to file a response to Tile's Complaint on or before June 22, 2020. To date, Defendant has not answered or otherwise moved with respect to the Complaint, and the time for Defendant to answer or otherwise move with respect to the Complaint has expired. Nickerson Decl. ¶¶ 9-12. Given Defendant's failure to appear in this case, the Clerk of the Court properly entered a Certificate of Default on July 1, 2020. Id. ¶ 15.

### ARGUMENT

### I. TILE IS ENTITLED TO A DEFAULT JUDGMENT

Tile has met the prerequisites for a default judgment. Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. First, the clerk must enter a certificate of default when "a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Second, upon obtaining a clerk's certificate of default, a plaintiff must next seek a judgment by default under Rule 55(b). Here, the Clerk of the Court entered a certificate of default

4

on July 1, 2020, and the Court ordered Tile to file this present motion within 14 days of the entry of default.  <u>See</u> Nickerson Decl. ¶ 15; June 26, 2020 Text Order.

In assessing whether to enter a default judgment, the Court must accept as true all well-pleaded allegations in the Complaint, except those pertaining to the amount of damages.  <u>See, e.g.,</u> <u>Cotton v. Slone</u>, 4 F.3d 176, 181 (2d Cir. 1993); <u>Malletier v. Carducci Leather Fashions, Inc</u>., 648 F. Supp. 2d 501, 502 (S.D.N.Y. 2009).  Indeed, "[w]hen a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability."  <u>Bravado Int'l Group Merch. Servs. v. Ninna, Inc.</u>, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992)).  Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, it is within the Court's discretion whether to hold a hearing determine the amount of damages in the context of a default judgment.  <u>See</u> Fed. R. Civ. P. 55(b)(2).  "[I]t [is] not necessary for the District Court to hold a hearing, as long as it is ensured that there was a basis for the damages specified in the default judgment."  <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989).  Where a plaintiff claims statutory damages, courts routinely forego evidentiary hearings to determine the measure of damages.  <u>See</u>, <u>e.g.</u> <u>Rolex Watch U.S.A., Inc. v. Brown</u>, C.A. No. 01 CIV.9155 JGK AJP, 2002 WL 1226863, at *2 (S.D.N.Y. June 5, 2002) ("Here, of course, the issue is statory damages, making it even more appropriate to hold the inquest on a paper record."); <u>Church &</u> <u>Dwight Co. v. Kaloti Enters. of Michigan LLC</u>, 697 F. Supp. 2d 287, 295 (E.D.N.Y. 2009), <u>vacated</u> <u>on other grounds</u>, C.A. No. 07 Civ. 0612(BMC) (E.D.N.Y. Sept. 28, 2011) ("where the issue is statutory damages, inquest by paper record is particularly appropriate").  Accordingly, Tile's well-pleaded allegations in the Complaint establish Defendant's violations of the Lanham Act and entitle Tile to an award of statutory damages.

5

**Tile Has Set Forth Valid Trademark Infringement Claims**

The Lanham Act is grounded in two central policy concerns. <u>See</u> <u>Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.</u>, 982 F.2d 633, 636 (1st Cir. 1992). First, the Lanham Act focuses on protecting consumers from confusion: "Every product is composed of a bundle of special characteristics. The consumer who purchases what he believes is the same product expects to receive those special characteristics." <u>Id</u>. Second, the Lanham Act protects "the trademark owner's goodwill" and allows the trademark holder "to shape the contours of his reputation." <u>Id</u>. Indeed, just two weeks ago, the Supreme Court issue an opinion emphasizing that the dual purposes of trademark law were to "secure[] to the owner of the mark the goodwill of her business and [to] protect[] the ability of consumers to distinguish among competing producers." <u>United States Patent & Trademark Office v. Booking.com B. V.</u>, C.A. No. 19-46, 2020 WL 3518365, at *2 (U.S. June 30, 2020) (slip opinion) (citing <u>Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U. S. 189, 198 (1985); S. Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946) (trademark statutes aim to "protect the public so it may be confident that, in purchasing a product bearing a particular trademark which it favorably knows, it will get the product which it asks for and wants to get")).

As recently stated by this Court, "[c]ourts employ substantially similar standards when analyzing claims for trademark infringement and false designation of origin (that is, unfair competition) under Sections 32 and 43 of the Lanham Act. Thus, a single standard will apply to both of plaintiff's claims for relief." <u>J.T. Kalmar GmbH v. KLS Lighting Co.</u>, C.A. No. 17-CV-7505 (BMC), 2019 WL 3780091, at *2 (E.D.N.Y. Aug. 12, 2019) (internal quotations omitted) (citing <u>Van Praagh v. Gratton</u>, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014)). "To succeed on a claim for trademark infringement under the Lanham Act, a plaintiff must show two things: (1) that it has a valid mark entitled to protection, and (2) that the defendant's use of the mark is likely to cause confusion." <u>Id.</u>; <u>see</u> <u>also</u> <u>Merck & Co., Inc. v. Mediplan Health Consulting, Inc.</u>, 425 F.

6

Supp. 2d 402, 411 (S.D.N.Y. 2006) (citing <u>Savin Corp. v. Savin Group</u>, 391 F.3d 439 (2d Cir. 2004)); <u>E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.</u>, 90 F. Supp. 2d 277, 292 (S.D.N.Y. 2000) ("The likely confusion may relate to the source of the product . . . or to affiliation with or sponsorship of the alleged infringer by the trademark owner").[1]

Here, there is no dispute that the Tile Marks are valid and enforceable. On September 11, 2018, the U.S. Patent and Trademark Office issued Reg. No. 5,561,759 and Reg. No. 5,561,760 for use of the TILE mark on, *inter alia*, a "Wireless tracking device…". <u>See</u> Nickerson Decl. ¶ 6, Ex. B; Complaint at ¶ 17. Tile's certificates of registration for the Tile Marks from the USPTO are *prima facie* evidence of the validity of the Tile Marks, its ownership of the marks, and its exclusive right to use the marks in commerce or in connection with the goods or services specified in the certificates. 15 U.S.C. § 1057(b); <u>see</u>, <u>e.g.</u>, <u>Booking.com B. V.</u>, 2020 WL 3518365 at *2 ("The owner of a mark on the principal register enjoys valuable benefits, including a presumption that the mark is valid."); <u>Church of Scientology Int'l v. Elmira Mission of the Church of Scientology</u>, 794 F.2d 38, 42 (2d Cir. 1986) (noting that "[a]s holders of numerous federally registered trademarks [plaintiff is] entitled to a strong presumption of [its] marks' validity and of ownership"); <u>J.T. Kalmar GmbH</u>, 2019 WL 3780091, at *2 ("[P]laintiff's mark is registered with the USPTO, and is therefore deemed valid and entitled to protection for the purposes of this

---

[1] While Tile's intent was to assert unfair competition / false designation of origin claims under the Lanham Act as explained herein, even if Tile's claims were viewed under the lens of a false advertising claim under the Lanham Act, Tile's complaint states a viable claim for the same. In order to assert a false advertising claim, a plaintiff must allege that a statement is: (1) either literally or impliedly false; (2) material; (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff. <u>See</u> <u>Merck Eprova AG v. Gnosis S.p.A.</u>, 760 F.3d 247, 255-56 (2d Cir. 2014). Here, Tile's allegations that Defendant is misrepresenting the condition of its products to unknowing consumers easily satisfies each element. As the First Circuit aptly recognized in assessing the similarity in the liability standards for different types of claims under the Lanham Act, "all roads lead to Rome." <u>Nestle</u>, 982 F.2d at 640.

306499138 v7

motion."). In light of the presumption given to Tile's federally registered marks combined with Defendant's default, there is little doubt that Tile has satisfied the first element of demonstrating ownership of two valid marks entitled to the protection of the law.

The second element requires Tile's Complaint to set forth facts to plausibly suggest that Defendant's use of the Tile Marks is likely to cause confusion. There can be no dispute that Tile's Complaint alleges conduct by the Defendant that is likely to cause confusion. As an initial matter, as to the counterfeit products,[2] the standard for consumer confusion is easily satisfied "because counterfeits, by their very nature, cause confusion." Coach, Inc. v. Horizon Trading USA Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (quotation omitted). As to the remaining alleged acts, in order to determine whether a defendant's use of a mark is likely to cause consumer confusion, courts in the Second Circuit typically engage in a weighing analysis using the eight Polaroid factors, which are the following: (1) the strength of plaintiff's mark; (2) the

---

[2] Tile has alleged that Defendant has engaged in trademark counterfeiting by two means. First, and most obvious, Tile has alleged that the products being sold by Defendant are counterfeit products bearing the Tile Marks. See, e.g., Compl. ¶¶ 5, 6, 27, 28, 33, 44. Given Defendant's default, these allegations are now admitted. Second, even if the products sold by Defendant were initially manufactured by Tile, Defendant's products are still "counterfeit" products under the law due to the nefarious manner in which Defendant has sold the Tile Products. In the gray market goods context, even where the original product is manufactured by the trademark holder, a difference in trademarked goods "may well turn an otherwise 'genuine' product into a 'counterfeit' one. . . because a difference in products bearing the same name confuses consumers and impinges on the . . . trademark holder's goodwill." Nestle, 982 F.2d at 638; see also Coty Inc. v. Cosmopolitan Cosmetics Inc., No. 18 CV 11145-LTS-HBP, 2020 WL 106745, at *4 (S.D.N.Y. Jan. 9, 2020) (ruling that plaintiff had pleaded a plausible counterfeiting claim as "Plaintiffs have alleged the [] Products bear Plaintiffs' registered trademark, are not authorized for resale, and are sold in an intentionally fraudulent manner by which to trick consumers into believing they are the genuine article despite the material difference[s]"); Tiffany and Co. v. Costco Wholesale Corp., C.A. No. 13-CIV-1041 (LTS) (DCF), 2019 WL 120765, at *8 (S.D.N.Y. Jan. 7, 2019); Johnson & Johnson Consumer Cos. v. Aini, 540 F. Supp. 2d 374, 385 (E.D.N.Y. 2008) (determining the product to be counterfeit based on differences in packaging such as the lack of an expiration date and batch code). Accordingly, Tile alleges two different manners in which Defendant has sold counterfeit Tile Products.

8

similarity of plaintiff's and defendant's marks; (3) the proximity of the products; (4) the likelihood that plaintiff will "bridge the gap"; (5) actual confusion between products; (6) defendant's good or bad faith in adopting the mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers. Polaroid Corp. v. Polorad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). "No single factor is dispositive, nor is a court limited to consideration of only these factors." Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 130 (2d Cir. 2004) (quoting Polaroid, 287 F.2d at 495).

Here, the Tile Products Defendant offers for sale and sells bear the actual Tile Marks, are advertised to be genuine Tile Products protected by Tile's manufacturer's warranty, are advertised and sold online (making the channels of trade and advertising mechanisms identical), and are sold to the same prospective consumers. The allegations in Tile's Complaint easily satisfy the "likelihood of confusion" test set forth in Polaroid. Indeed, given the dual purposes of trademark law both to ensure customers get the products they intend to receive and to allow a trademark holder the ability to shape the contours of its reputation, it is clear that Defendant's conduct undermines these two goals and is a clear case of exactly the misconduct the Lanham Act is intended to prohibit. As set forth in the Complaint and shown above, it is alleged that Defendant is: (1) selling counterfeit product; (2) selling opened-packaged, used products as "new" to unsuspecting customers; and (3) selling Tile Products that are not subject to the same quality control, warranty protections, or come in the same packaging as legitimate Tile Products. See Zino Davidoff SA v. CVS Corp., 571 F.3d 238 (2d Cir. 2009) (granting preliminary injunction due to material differences in quality control of the product). In fact, courts, including those in this circuit, have consistently found that differences in warranty protections alone can form the factual basis for a trademark infringement claim. See Dan-Foam v. Brand Name Beds, LLC, 500 F.Supp.2d 296 (S.D.N.Y. 2007) ("the lack of an enforceable warranty standing alone is sufficient

9

to render a product inferior for trademark infringement analysis purposes.") quoting Bose Corp. v. Silonsonnic Corp., 413 F.Supp.2d 339, 345 (S.D.N.Y.2006); see also Nestle, 982 F. 2d 633, 639 n.7 ("Other sorts of differences — differences in, say, warranty protection or service commitments — may well render products non-identical in the relevant Lanham Trade-Mark Act sense."); Heraeus Kulzer LLC v. Omni Dental Supply, C.A. No. 12-11099-RGS, 2013 WL 3305284, at *3 (D. Mass. July 1, 2013) (lack of warranty protection can for the basis of trademark liability); Bose Corp. v. Ejaz, C.A. No. 11-10629-DJC, 2012 WL 4052861, at *9 (D. Mass. Sept. 13, 2012) (one year difference in warranty between domestic and foreign radio systems constituted trademark infringement); Fender Musical Instruments Corp. v. Unlimited Music Ctr., Inc., C.A. No. 3:93CV2449, 1995 WL 241990, at *3 (D. Conn. Feb. 16, 1995) (foreign Fender guitars not covered by Fender warranty likely to create consumer confusion because they did not come with "services and guarantees that usually accompany such a sale").

Each of the aforementioned instances of wrongdoing is actionable independently under trademark law, and when combined, Tile has not only shown that confusion is likely (which is all that is required), it has shown that confusion has likely already occurred and will continue to occur absent swift injunctive relief (as discussed in more detail below). Given that "[w]hen a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability," Tile has alleged facts sufficient to show that its Complaint set forth facts that plausibly set forth a basis for liability for its trademark infringement and unfair competition claims under 15 U.S.C. §§ 1114, 1125. Bravado Int'l, 655 F. Supp. 2d at 188 (citing Greyhound Exhibitgroup, 973 F.2d at 158).

## II. THIS COURT SHOULD PERMANENTLY ENJOIN DEFENDANT FROM FUTURE INFRINGEMENT OF TILE'S TRADEMARKS

Pursuant to 15 U.S.C. § 1116, Tile is entitled to a permanent injunction to prevent any

future trademark infringement by Defendant. Under the Lanham Act, a court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right [of a trademark holder]." 15 U.S.C. § 1116(a). An injunction is the "usual and standard" remedy in Lanham Act cases. See 5 J. Thomas McCarthy, Trademarks & Unfair Competition § 30:1 (4th ed. 2006). Courts routinely grant injunctive relief through default judgments. See, e.g., United We Stand Am., Inc. v. United We Stand, Am. New York, Inc., 128 F.3d 86, 88 (2d Cir. 1997) (affirming default judgment in action to enjoin the use of plaintiff's registered service mark); Gucci Am. Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) (ordering permanent injunction after default judgment).

In order to obtain a permanent injunction, Tile must demonstrate: (1) actual success on the merits; and (2) irreparable harm. Gucci Am. Inc., 678 F. Supp. 2d at 120. In this case, "plaintiffs have established success on the merits because the defendants' default constitutes an admission of liability." Id. As to the second prong, irreparable harm is established in trademark cases where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be mislead, or indeed simply confused, as to the source of the goods in question." Id.

Here, there is no question that consumers are likely to be confused by the misconduct of the Defendant. Indeed, as discussed above, Defendant is selling counterfeit, used, and liquidation Tile Products to unsuspecting customers as "new" Tile Products. As customers are unknowingly receiving products that are not what they intended to buy, Tile's reputation in the eyes of consumers is not only out of its own hands (which is alone actionable), but it is likely to be negatively impacted by Defendant's misconduct. One need not engage in any mental gymnastics to understand that a customer who has a negative experience with a Tile Product sold by Defendant is not likely to think highly of Tile and its brand. This kind of reputational harm is truly irreparable.

11

As stated by a Court in the Southern District, "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark… because loss of control over one's reputation is neither calculable nor precisely compensable." U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) (citation and internal quotation marks omitted); see also El Greco Leather Prods. Co., Inc. v. Shoe World, 806 F.2d 392, 395 (2d Cir. 1986) ("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark"); Mister Softee, Inc. v. Tsirkos, C.A. No. 14-cv-1975-LTS-RLE, 2015 WL 7458619, *5 (S.D.N.Y. Nov. 23, 2015) (finding irreparable harm because "Plaintiffs have no actual control over the quality of Defendant's products or services"); New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 325 (S.D.N.Y. 2010) ("It is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard").

Accordingly, Plaintiff requests that the Court enter a permanent injunction enjoining Defendant and its officers, agents, employees, servants, successors and assigns, and all other persons in active concert or participation with it from:

a. selling, advertising or taking any steps to sell or advertise, any Tile Products utilizing the Tile Marks;

b. acquiring, or taking any steps to acquire, any Tile Products;

c. engaging in any activity constituting unfair competition with Tile; and

d. disposing, destroying, altering, moving, concealing, tampering with or in any manner secreting any business records (including electronic records), of any kind, including invoices, correspondence, sales records, books of account,

12

receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, purchase, sale or offer for sale, or distribution of any goods bearing the Tile Marks or any colorable imitation or confusingly similar variation thereof.

In accordance with Rule 54(c) of the Federal Rules of Civil Procedure, the relief requested herein is identical to that requested in the Complaint and consistent with the Defendant's duty to preserve evidence. See Complaint, Wherefore Clause, 1(a)-d; see also Fed. R. Civ. P. 54(c).

## III. PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES

The Lanham Act authorizes an award of statutory damages in lieu of actual damages. By virtue of its default, Defendant's infringement is deemed willful, and therefore the Court has discretion to award anywhere between $1,000 and $2,000,000 per counterfeit mark per type of good sold. 15 U.S.C. § 1117(c); see, e.g., All-Star Marketing Group, LLC v. Media Brands Co., Ltd., 775 F. Supp. 2d 613, 620-22 (S.D.N.Y. 2011). Statutory damages are especially appropriate in default judgment cases due to the defendant's nondisclosure. See, e.g., Coach, Inc. v. Melendez, C.A. No. 10 Civ. 6178, 2011 WL 4542971 at * 7 (S.D.N.Y. Sept. 2, 2011) (noting that the "lack of information regarding defendants' sales and profits make statutory damages particularly appropriate for these kinds of default cases"). The amount of statutory damages does not depend upon actual damages. Statutory damages are made available to plaintiffs for the "deterrent effect on defendants and others, and the defendants' failure to produce records from which more traditional damages could be computed." Rodgers v. Anderson, C.A. No. 04-cv-1149, 2005 WL 950021, at * 2 (S.D.N.Y. April 26, 2005).

306499138 v7

Given that the parties have conducted no formal discovery due to Defendant's default,[3] Tile seeks damages in the amount of $500,000 for each of its two marks, for a total award of $1,000,000. See 15 U.S.C. § 1117(c). While the statute allows Tile to seek up to $2,000,000 in statutory damages for each mark from each defendant for a total award of $4,000,000, Tile believes a $1,000,000 total award will serve the goals of compensating Tile, punishing Defendant, and deterring others from similar misconduct.[4] See Malletier, 648 F. Supp. 2d at 504-05 ("where, as here, a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others"); Gucci Am., Inc. v. Curveal Fashion, C.A. No. 09 Civ. 8458, 2010 WL 308303, at *3 (S.D.N.Y. Jan. 20, 2010) (awarding damages for infringement of fifteen types of goods for a total of $13.5 million). Given the current COVID-19 pandemic and an increased focus on e-commerce in general, Tile believes that the deterrence piece should be given the greatest weight by the Court. While the amount of the award is important to compensate Tile for its damages, Tile is unlikely to collect any money from the Defendant. However, a $1,000,000 judgment is something that Tile can use to deter other similar wrongdoers in its effort to protect the consuming public from similar misconduct as well as protect Tile's brand name. It is Tile's belief that for deterrence purposes, a

---

[3] Through its pre-lawsuit investigation, Tile was able to obtain a single invoice from Defendant evidencing the importation and resale into Queens, New York of $136,000 worth of Tile Products. Nickerson Decl. ¶7, Ex. C. Tile believes that this is only the tip of the iceberg when it comes to Defendant's resale of Tile Products and that Defendant's actual sales are likely to be far higher (again, this is a single invoice). However, without the benefit of discovery, Tile cannot state with certainly Defendant's full sales history of Tile Products. Indeed, this fact makes statutory damages particularly useful in default scenarios as Defendant should not be permitted to make a tactical choice not to appear in order to avoid discovery and a potentially higher damages award.

[4] While also entitled to attorneys' fees and costs, given Defendant's default and that it is unlikely that any money will ever be recovered by Tile, Tile does not wish to incur the cost, or burden the Court, with a petition for attorneys' fees and costs. Therefore, Tile does not seek its costs or attorneys' fees associated with this matter.

14

$1,000,000 judgment is far more valuable than a six-figure judgment. Accordingly, given the current pandemic and focus on e-commerce, a $1,000,000 award would be legally sound, justified by the harm suffered by Tile and particularly useful for deterrence purposes.

Tile's request for an award of statutory damages does not require the Court to conduct an evidentiary hearing. See, e.g., Malletier, 648 F. Supp. 2d at 503 (noting that a court need not hold a hearing in order to calculate damages). Courts have awarded statutory damages post-default without an evidentiary hearing based upon the papers submitted by plaintiff. See, e.g. Rolex Watch U.S.A., Inc. v. Brown, 2002 WL 1226863, at *2; Church & Dwight Co., 697 F. Supp. 2d at 295.

## CONCLUSION

For the foregoing reasons, Tile, Inc. respectfully requests the Court grant its motion for entry of default judgment in its favor against defendant Computron Systems International, Inc., award statutory damages pursuant to the Lanham Act in the amount of $1,000,000 ($500,000 for each of the two marks infringed), and enter a permanent injunction against Defendant restraining it from engaging in future infringement of Tile's trademarks and for whatever other relief the Court deems just and proper.

*[Signature Page Follows]*

306499138 v7

Respectfully submitted,

Plaintiff Tile, Inc.,

by its attorney,


*/s/ Morgan T. Nickerson*
Morgan T. Nickerson (BBO # 667290)
morgan.nickerson@klgates.com
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100
(617) 261-3175

Dated: July 15, 2020