UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  TILE, INC.,                                               :

                                          Plaintiff,    :   **MEMORANDUM DECISION AND ORDER**

                - against -                  :   20-cv-2297 (BMC)

  COMPUTRON SYSTEMS
  INTERNATIONAL,                   :

                                   Defendant.  :
----------------------------------------------------------- X

**COGAN**, District Judge.

This case is before the Court on defendant's motion to vacate the default judgment entered against it. The threshold question raised by the motion is whether plaintiff properly effected service on the foreign defendant. If it did not, then the ruling on the motion is not discretionary; the judgment must be vacated. See RCC Ventures, LLC v. Brandtone Holdings Ltd., 322 F.R.D. 442, 446 (S.D.N.Y. 2017). If service was proper, then the Court has discretion as to whether to vacate the default judgment. That discretion is guided by a three-factor test: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); see also State St. Bank and Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166-67 (2d Cir. 2004) ("When a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b), the court's determination must be guided by [the] three principal factors [mentioned above].").

Plaintiff served the Canadian corporate defendant by leaving the summons and complaint with defendant's CEO at his office in Ontario.[1] Plaintiff argues that this was satisfactory because Federal Rule of Civil Procedure 4(f)(1) permits service on an individual "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents," and Rule 4(h)(2) permits service on a foreign business entity "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Plaintiff asserts that it has satisfied both the Hague Convention and Ontario law for the service of process.

Defendant does not dispute that service was proper under the Hague Convention and Ontario law, but argues that since Rule 4(h)(2) excludes delivery "by personal service", service was invalid.

There are two subsections of Rule 4 that are operative here. First, Rule 4(f), "Serving an Individual in a Foreign Country," states:

> Unless federal law provides otherwise, an individual … may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

---

[1] The process server attempted to hand the summons and complaint to defendant's CEO, but he refused to take it, so the process server dropped it at his feet. Defendant does not dispute that this was personal service.

2

>  (C) unless prohibited by the foreign country's law, by:
>
>  (i) delivering a copy of the summons and of the complaint to the individual personally; or
>
>  (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt …

These provisions for serving an individual are incorporated by reference in Rule 4(h)(2), which provides for service on foreign or domestic business entities:

>  Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise … a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served …
>
>  (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Because Canada is a signatory to the Hague Convection, see Signify N. Am. Corp. v. Axis Lighting Inc., No. 19-cv-5516, 2019 WL 4994288 (S.D.N.Y. Oct. 8, 2019), there are alternative reasons why plaintiff's service on defendant complied with the Hague Convention and Rule 4.

First, the Convention provides for service by "sending" judicial documents "by postal channels, directly to persons abroad." Hague Convention Article 10(a). That is not what plaintiff did here. But the Hague Convention also allows a plaintiff to "effect service … through competent persons of the State of Destination." Id. at Article 10(c). This means that an authorized person permitted to serve legal process in the foreign jurisdiction can effect service – that process server is a "competent person[] of the State of Destination," because the law of Ontario grants that person authority to serve process. That is what plaintiff did. Service was therefore effective under the Hague Convention pursuant to Federal Rule of Civil Procedure 4(f)(1).

3

However, even if this reading of the Hague Convention together with Ontario law and Rule 4(f) were incorrect, service would still be valid. We start with the proposition – self-evident from its text – that nothing in the Hague Convention prohibits methods of service beyond those specified in Article 10 if acceptable to the host country. If personal service on a corporation by a licensed process server was not included in Article 10(c) and therefore Rule 4(f)(1) were not available, that would direct us to Rule 4(f)(2)(A) – "if an international agreement allows but does not specify other means" – under which service is permitted "as prescribed by the foreign country's law." Again, since Ontario law allows personal service on an officer of a corporation as a means of serving the corporation, the service was valid under Rule 4(f)(2)(A).

Where defendant goes astray is that neither of these theories of effective service requires invocation of Rule 4(f)(2)(C), and therefore the exclusion of personal delivery under Rule 4(h)'s incorporation of Rule 4(f)(2)(C)(ii) never comes into play. The three options in Rule 4(f)(2)(A-C) are phrased in the disjunctive, and plaintiff can rely on subsection (A) for personal delivery, since that is allowed in Ontario, without invoking subsection (C). Subsection (C), it seems to me, is limited to situations where the Hague Convention does not apply or foreign law does not permit personal service on a business entity. In that situation, Rule 4(h)(2) requires plaintiff to find another means to effect service.[2] Service was therefore effective.

---

[2] The cases relied on by defendant involved situations where there was no international agreement for service of process and either there was no provision for personal service under local law or personal service was not made. See Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries, 766 F.3d 74 (D.C. Cir. 2014) (OPEC); Adam Techs. LLC v. Well Shin Tech. Co., No. 18-CV-10513, 2019 WL 3800236 (D.N.J. Aug. 13, 2019) (People's Republic of China); Bidonthecity.com LLC v. Halverston Holdings Ltd., No. 12-cv-9258, 2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) (Russia); ISPEC, Inc. v. Tex R.L. Indus., Inc., No. 12-cv-4339, 2014 WL 4162858 (D.N.J. Aug. 20, 2014) (Taiwan). The only exception is Trump Taj Mahal Assocs. v. Hotel Servs., Inc., 183 F.R.D. 173 (D.N.J. 1998), which I think was wrongly decided.

Turning, then, to the discretionary factors under Rule 60(b), defendant first contends that its default was not willful because its CEO thought that "a United States court did not have the jurisdiction to issue a judgment against Computron." According to his affidavit, he based that belief upon the fact that defendant has no bank accounts or offices in the United States, and that defendant had made only two sales of plaintiff's products in the United States.

This subjective, unsupported belief does not remove defendant's deliberate decision to ignore the process of this Court from a characterization of willfulness. If every recipient of legal process could disclaim the obligation to respond by asserting, "gee, I didn't think I had to," then willfulness would have little meaning. Here, there is no indication that defendant's CEO is a lawyer or received bad advice from either a Canadian or United States lawyer. The decision not to appear was not an accident; it was a deliberate, reasoned decision, even if it was a poor decision. The default was therefore willful.

In terms of a meritorious defense, I am skeptical that defendant has made the necessary showing. This is a gray market goods case, where the issue is whether the products defendant sold are materially different from the products sold within the United States. As is common in these cases, plaintiff asserts that the warranty attached to the offending products is different than the warranty it issues for U.S.-sold products, and thus the products are materially different. Defendant's affidavit asserts that the products it sold were "genuine." However, although that may not raise a genuine issue, I cannot make that determination without more evidence.

Finally, plaintiff points out that it would be prejudiced if the default was vacated because defendant waited a year before seeking to vacate the default judgment, and plaintiff has no way to ascertain whether defendant has rendered itself judgment proof or made collection more

5

difficult. Defendant has not responded to this expressed concern with any assurances that it is able to satisfy a judgment.

As noted above, the factors as applied in this case generally favor maintaining the judgment and denying the motion to vacate. The only factor that even arguably weighs in defendant's favor is the possibility of a meritorious defense, and the Court is dubitante whether defendant's vague reference to selling "genuine" products would withstand summary judgment.

Nevertheless, considering the strong preference for decisions on the merits, see Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995), the Court is inclined to find a way to resolve the case other than by default. It is well settled that in determining to exercise its discretion to vacate a default judgment, a court may impose conditions sufficient to alleviate any prejudice that the plaintiff may suffer. See Powerserve Inter., Inc. v. Lavi, 239 F.3d 508 (2d Cir. 2001). Here, the potential prejudice that plaintiff has so far incurred can be alleviated by requiring defendant to reimburse plaintiff for plaintiff's reasonable costs and attorneys' fees in having moved for a default judgment and opposing the motion to vacate. In addition, to secure plaintiff against the possibility of an uncollectible judgment, the Court will require defendant to post a judgment bond.

As to the amount of the attorneys' fees and bond, the parties are directed to attempt to stipulate and report to the Court within 14 days. In attempting to resolve those issues, plaintiff should bear in mind that although the Court imposed $1,000,000 in statutory damages in the default judgment, that amount may not be appropriate if defendant makes a satisfactory showing of an inability to pay that amount, or a minor number of acts of infringement, and the absence of asset transfers without consideration during the period in question. The purpose of the bond is to secure plaintiff; it is not to provide leverage in negotiating a settlement. Should the parties fail to

6

stipulate to the amount of attorneys' fees or bond, defendant may move the Court to fix those amounts within 21 days of this Order.[3]

Defendant's motion to vacate the default judgment is therefore granted, subject to the satisfaction of the conditions set forth above. Vacatur is stayed pending satisfaction of those conditions, and until the Court rules that they have been satisfied, the judgment remains outstanding and enforceable.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       August 28, 2021

---

[3] The Court rejects defendant's claim that plaintiff committed a "fraud on the court" by asserting that defendant sold the offending products on the internet when it did not. First, the allegation was not material to defendant's liability. Second, whether plaintiff had a good faith basis for that allegation may inform a Rule 11 motion, but defendant's decision not to respond to the complaint and dispute the allegation does not turn it into a "fraud on the court." If defendant meets the conditions to vacate the default, the vacatur will be without prejudice to defendant's right to seek sanctions under Rule 11.